IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARC C. JACKSON,

               Plaintiff,           Case No. 2:17-cv-12537-AC-MKM

vs.                            Hon. Avern Cohn

BLUE CROSS BLUE SHIELD OF MICHIGAN,
a non-profit Michigan Corporation,

               Defendant.

| CHARLES W. PALMER (P29271) | BENJAMIN W. JEFFERS (P57161) |
|---|---|
| Charles W. Palmer, P.C. | Hickey Hauck Bishoff & Jeffers, PLLC |
| Attorney for Plaintiff | Attorneys for Defendant |
| 140 Elm Street | One Woodward, Suite 2000 |
| Wyandotte MI 48192 | Detroit, MI 48226 |
| (734) 284-5550 | 313.964.9019 (direct line) |
| cpalmerpc@sbcglobal.net | bjeffers@hhbjlaw.com |

## DEFENDANT'S MOTION FOR JUDGMENT
## BASED ON THE ADMINISTRATIVE RECORD

This an ERISA benefit denial case.   Pursuant to *Wilkins v. Baptist Healthcare Systems, Inc.*, 150 F.3d 609 (6th Cir. 1998), this matter is to be determined upon the parties' cross motions for judgment. Therefore, Defendant Blue Cross Blue Shield of Michigan[1] ("Defendant") through its attorneys Hickey Hauck Bishoff & Jeffers, PLLC, hereby moves for judgment based on the administrative record.  The grounds supporting Defendant's Motion are set forth in the attached Brief.

<div style="margin-left:40%">

Respectfully submitted,

*/s/Benjamin W. Jeffers*
Benjamin W. Jeffers (P57161)
Attorneys for Defendant
Hickey Hauck Bishoff & Jeffers, PLLC
One Woodward Avenue, Suite 2000
Detroit, MI 48226
(313) 964-9019 (direct dial)
bjeffers@hhbjlaw.com

</div>

DATED:     February 9, 2018

---

[1] The correct entity is the "Blue Cross Blue Shield of Michigan *Long Term Disability Program*."  The parties need to address this and ensure that subsequent pleadings accurately reflect the correct name for the Defendant.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARC C. JACKSON,

              Plaintiff,            Case No. 2:17-cv-12537-AC-MKM

vs.                             Hon. Avern Cohn

BLUE CROSS BLUE SHIELD OF MICHIGAN,
a non-profit Michigan Corporation,

              Defendant.

| | |
|---|---|
| CHARLES W. PALMER (P29271) | BENJAMIN W. JEFFERS (P57161) |
| Charles W. Palmer, P.C. | Hickey Hauck Bishoff & Jeffers, PLLC |
| Attorney for Plaintiff | Attorneys for Defendant |
| 140 Elm Street | One Woodward, Suite 2000 |
| Wyandotte MI 48192 | Detroit, MI 48226 |
| (734) 284-5550 | 313.964.9019 (direct line) |
| cpalmerpc@sbcglobal.net | bjeffers@hhbjlaw.com |

## DEFENDANT'S BRIEF IN SUPPORT OF
## MOTION FOR JUDGMENT BASED ON ADMINISTRATIVE RECORD

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... ii

ISSUES PRESENTED................................................................................ iv

I.   INTRODUCTION ............................................................................ 1

II.  BACKGROUND .............................................................................. 2

    A.   The parties and the genesis of this claim............................... 2

    B.   Plaintiff had the burden of proof to substantiate a claim. ................... 4

    C.   The Program administrators conducted multiple reviews of Plaintiff's claim based on an extensive record..................................................... 6

III. STANDARD OF REVIEW ........................................................... 11

IV.  ARGUMENT .................................................................................. 13

    A.   The Decision-Making Process was Thorough and a "Reasoned Explanation Exists to Support" the Program's Decision. .................. 15

        1.   Process: Jackson was given a full and fair opportunity to develop the record and to try and prove his claim. ................. 15

        2.   Evidence: The Administrative Record is fulsome and replete with information from which a reasonable person could rely on to deny the claim. ............................................................... 17

    B.   That Some Evidence Supports Plaintiff Does Not Render the Ultimate Decision Arbitrary and Capricious..................................................... 21

    C.   The Fact That the Program Provided Benefits at One Point During the Appeal Process is Legally Immaterial................................................ 23

V.   CONCLUSION................................................................................ 25

i

# TABLE OF AUTHORITIES

## CASES

*Black & Decker Disability Plan v. Nord,*
   538 U.S. 822, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003) .................................. 21

*Blount v. United of Omaha Life Ins. Co.,*
   2016 WL 4191725 (M.D. Tenn., August 8, 2016) ....................................... 14, 16

*Davis By & Through Farmers Bank & Capital Trust Co. of Frankfort,*
   *Ky. v. Ky. Fin. Cos. Retirement Plan,*
   887 F.2d 689 (6th Cir. 1989) .............................................................................. 12

*Dix v. Blue Cross and Blue Shield Ass'n Long Term Disability Program,*
   613 Fed.Appx. at 293 (5th Cir. 2007) ................................................................ 24

*Firestone Tire & Rubber Co. v. Bruch,*
   489 U.S. 101 (1989) ........................................................................................... 11

*Frazier v. Life Ins. Co. of North America,*
   *725 F3d 560, 567 (6th Cir. 2013)* ..................................................................... 23

*Gilrane v. Unum Life Ins. Co. of America,*
   2017 WL 4018853 (E.D. Tenn., September 12, 2017) ....................................... 25

*Gismondi v. United Techs. Corp.,*
   408 F.3d 295 (6th Cir. 2005) .............................................................................. 21

*Godmar v. Hewlett-Packard Co.,*
   631 Fed. Appx. 397, 401-402 (6th Cir. 2015) ................................................... 24

*Huffaker v. Metropolitan Life Ins. Co.,*
   271 Fed.Appx. 493 (6th Cir. 2008) ........................................................ 13, 21, 23

*Marks v. Newcourt Credit Grp., Inc.,*
   342 F.3d 444  (6th Cir. 2003) ............................................................................. 12

*McClain v. Eaton Corp. Disability Plan,*
   740 F.3d 1059 (6th Cir. 2014) ............................................................................ 12

*McDonald v. W.-S. Life Ins. Co.,*
   347 F.3d 161 (6th Cir. 2003) ........................................................................ 12, 20

*Miller v. Metro. Life Ins. Co.,*
  925 F.2d 979 (6th Cir. 1991) ............................................................. 11

*Schwalm v. Guardian Life Ins. Co. of Am.,*
  626 F.3d 299 (6th Cir. 2010) ............................................................. 12

*Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health*
  *& Welfare Trust Fund,*
  203 F.3d 926 (6th Cir. 2000) ............................................................. 12

*Spangler v. Lockheed Martin Energy Sys., Inc.,*
  F3d 356 (6th Cir. 2002) ..................................................................... 16

*Whitaker v. Harford Life and Acc. Ins. Co.,*
  404 F.3d 947 (6th Cir. 2005) ............................................................. 21

*Wilkins v. Baptist Healthcare Systems, Inc.,*
  150 F.3d 609 (6th Cir. 1998) ......................................................... 2, 11

*Wooden v. Alcoa, Inc.,*
  511 Fed.Appx. 477 (6th Cir. 2013) ............................................... 21, 23

iii

## ISSUES PRESENTED

Should the Court enter judgment in Defendant's favor on an ERISA program's denial of benefits where there was an exhaustive review of medical records and other information, the disability claim is premised largely on subjective, self-reported symptoms of pain that are insufficiently supported by objective evidence, and the Plaintiff was given the benefit of the doubt throughout the internal appeal process?

|  |  |
|---|---|
| **Plaintiff answers:** | **No** |
| **Defendant answers:** | **Yes** |

iv

## I.    INTRODUCTION

Plaintiff Marc Jackson ("Plaintiff" or "Jackson") stopped working as a customer service representative at the end of 2014 from non-party Blue Cross Blue Shield of Michigan ("BCBSM"), claiming a disability due to back pain and fibromyalgia. He applied for long term disability benefits in July 2015 from BCBSM's benefits program. Plaintiff had the burden to persuade the program decision-makers through objective medical evidence that he had a disabling condition preventing him from working in his sedentary desk job. After five (5) internal reviews that considered extensive medical records and the opinions or treatment of approximately a dozen medical professionals, the program ultimately concluded that Plaintiff failed to satisfy his burden of proof. His self-reported symptoms of pain and other health issues simply did not constitute a disability wholly preventing him from working at his job. This conclusion was consistent with Jackson's own work history at BCBSM - his back issues were caused by an accident in 2006 and yet he worked successfully for eight years before leaving.

The Court's role is to determine whether the benefit denial was arbitrary and capricious in light of the overall administrative record and Plaintiff's burden of proof.  This standard of review does not permit the Court to undertake a *de novo* factual inquiry, nor to decide whether it would have reached a different result had it been in the program administrator's shoes during the three internal reviews.

1

Viewed through the lens of this standard of review and in relation to Plaintiff's underlying burden of proof, it is clear that Plaintiff cannot prevail. The program administrators looked at all the objective medical evidence and made a rational decision in light of the program requirements. That Plaintiff disagrees with the conclusions they reached merely establishes that reasonable people can disagree on this issue. But pointing out the existence of that disagreement does not satisfy Plaintiff's burden. For these reasons, the Court should grant Defendant's Motion for Judgment on the Administrative Record.

## II.    BACKGROUND

Below we identify the parties and Jackson's claim, summarize Jackson's burden of proof under the applicable Program documents, and explain the basic procedural history.[2]

### A.    The parties and the genesis of this claim.

Plaintiff worked for non-party Blue Cross Blue Shield of Michigan for approximately twenty-four years until December 23, 2014. *See* LTD-1 Form, AR 426-427, and LTD-2 Form, AR 3780-3784. He was a Customer Service Representative, with job duties he described as handling calls, assigning cases, and

---

[2] The Administrative Record has been lodged with the Court, but no portions have yet been "filed" in the ECF, given extensive medical records and personal information. The parties need to address with the Court which portions of the AR should be filed and under seal. The AR has been bates stamped with the pre-fix BCBSMLTD 1-5337. For ease of reference, the parties shall refer to portions as "AR _____."

2

acting as department liaison. LTD-2 Form at p. 4, AR 3783. It was a "sedentary" position, as defined in the Dictionary of Occupational Titles. *See* Transfer Skills Analysis Evaluation by Momentum Healthcare, Inc., 9/15/2015, p. 2, AR 1841-1848. ["Sedentary work involves exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently to lift, carry, push, pull or otherwise move objects, including the human body. Sedentary work involves sitting most of the time but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally, and all other sedentary criteria are met." *Id.*, and p. 3-5 (listing the BCBSM Customer Service Representative job expectations).]

The applicable program is the Blue Cross Blue Shield of Michigan LTD Program ("Program"). For purposes of this lawsuit, the Program assumed the rights and liabilities of a LTD program called the Blue Cross Blue Shield *Association* LTD Program of which BCBSM participated through the end of 2016. The Association program administered LTD benefits for employees of multiple "Blues" entities throughout the Country, including for BCBSM employees like Mr. Jackson. The operation of the Program was transitioned to the BCBS *Michigan* LTD Program as of January 1, 2017, but the terms and documentation remained

3

the same.  Mr. Jackson's rights and obligations did not change. And the Program remains a self-funded arrangement.[3]

Claiming a disability primarily due to back pain from disk herniation and fibromyalgia, Plaintiff stopped working at BCBSM as of December 2014, and applied for long term disability benefits in July 2015. *See* Jackson's Claim Application, "LTD-2," AR 3780-3784. He noted the injury that led to his back pain first occurred in May 2006. *Id.* He had disc decompression surgery in April 2010, recovered, and returned to work. Second CAC Decision Ltr, 10/21/2016, p. 3, AR 1903-1913. Thus, the conditions for which Jackson says caused his back pain occurred fully eight (8) years prior to leaving work. For years on end he was able to manage the very symptoms for which he now claims caused a total "disability."

**B.    Plaintiff had the burden of proof to substantiate a claim.**

Section 3.1 of the LTD Program documents provide that a participant must convince the Program with "objective medical evidence" that he or she is unable to

---

[3] The claim decisions initially were made by representatives working on behalf of the Association's National Employee Benefits Committee ("NEBC"), which served as the ERISA program administrator and named fiduciary for employee benefit programs of the independent Blues companies that elect to utilize the manager services offered by the Association through the National Benefits Administration Department ("NEBA").  The Administrative Record on internal was developed and compiled largely by individuals working on behalf of the NEBC.  After the spinoff to the existing Program, the final review and decision was made by representatives of Broadspire, the Program's third-party administrator, in July 2017.

perform work up to the applicable Disability standard. See Program Documents, ¶3.1 p. 10-11, AR 2377-2442. Under the default Disability standard, a participant "must establish to the satisfaction of NEBA or NEBC, as the case may be, that he or she is wholly prevented, by reason of mental or physical disability, from engaging in any occupation comparable to the occupation in which he or she was engaged for the Participating Employer at the time of, or immediately prior to the claimed onset of his or her Disability." Program Documents, ¶3.1(a) p. 10, AR2377-2442; *see also* Summary Plan Description, p. 7, AR2 443-2481 ("Definition of Disability").

The participant's burden is amplified and further explained in Section 3.2 of the Program documents. Program Documents, at ¶3.2 pp. 11-15. Section 3.2 initially explains again that, overall and generally, the participant has the general burden of proof. *Id.* at ¶3.2(a) p. 12. And then specifically, the participant has the burden to persuade the Program through objective medical and other evidence that (i) he or she has a disabling mental or physical condition, (ii) he or she cannot perform work described in the applicable performance or occupational standard, and (iii) there is a causal connection between the claimed disability and their inability to work. *Id.* at, ¶3.2(b)(i-iii), pp. 12-13. The burden of proof in the applicable Program documents routinely was highlighted for Jackson and his

counsel during the appeal process. *See e.g.*, 2nd CAC Letter, pp. 8-10 (citing to the "Relevant Program Provisions") AR 1910-1912.

Finally, a claimant's burden of proof as to any disabled status is continuing even if the Program initially accepts a claim. Under Section 4.2(c)(iv), if the Program determines that the participant is no longer disabled or is otherwise eligible for benefits, all further benefits shall cease effect with the first day of the month in which they made such a determination. *Id.*

**C.    The Program administrators conducted multiple reviews of Plaintiff's claim based on an extensive record.**

The Program contains three potential stages of internal review of a given claim. The first two stages were handled by Association administrators prior to the spinoff of the program in January 2017. The first decision-maker was a committee called the Medical Review Committee ("MRC"). Claimants who disagree with an MRC decision may appeal to the Claims Appeal Committee ("CAC"). Finally, although an Association Program official would have handled any final (and third) appeal stage, the final decision here was handled by third-party administrative professionals at Broadspire due to the Program spin-off in January 2017.   The decisions by the Association committees and Broadspire administrative are discussed below. Mr. Jackson's claim was reviewed five times.

***September 2015 - First MRC Decision***: The MRC did an analysis as of September 16, 2015, after Jackson's application for benefits and submission of

6

information to the Program. *See* First MRC Decision Ltr, 9/16/15, AR 1873-1881. The committee reviewed considerable data, including Jackson's short-term disability file, claim forms; his attending physician statement; multiple years of medical records; a Functional Capacity Evaluation ("FCE") dated September 2, 2015; the opinions of Dr. Terry L. Nicola, M.D., who is a board-certified physician in Physical Medical and Rehabilitation and who reviewed Jackson's entire file; and a Transferable Skills Analysis dated September 15, 2015. *Id.*

The MRC noted that Dr. Nicola concluded that the "testing and examination does not show any reliable/consistent evidence of a physical deficit from sedentary level activity." *Id.*, p. 4, AR 1876. He also noted while Jackson had begun to encounter back pain as of 2006 (eight years prior to him leaving work) and had a procedure for it in 2010, these problems did not manifest into a new and disabling condition relative to his work until 2014. *Id.*, pp. 2-3. This was evidenced by the September 2015 FCE, which showed that Jackson could complete almost 90% of the tasks associated with his type of work, and even then, he had dramatically downplayed his own abilities during the FCE evaluation. *Id.*, p. 3. (noting that the FCE "analysis showed an inconsistent performance/unacceptable effort" of 33% during the testing); and *see* FCE dated 9/2/15, AR 431-446. Taking all of the evidence into account, the MCR concluded that Jackson was not disabled. AR 1876, p. 4 ("the current objective medical evidence does not support that you are

7

unable to function in your activities of daily living or perform a sedentary level job").[4]

*January 2016 - First CAC Decision*: Jackson appealed the First MRC Decision to the Program's Claims Appeal Committee ("CAC"). In a very short letter dated January 27, 2016, the CAC overturned the First MRC Decision. *See* First CAC Decision Ltr, 1/27/16, AR 1882-1885. Subsequent letters from the Program explained the narrow reason for the reversal – the CAC wanted to afford Jackson the chance to obtain a *psychological* review, given that the MRC had focused on his physical conditions. *See, e.g.*, Second MRC Decision, 4/7/2016, AR 1886-1895; *see also* Second CAC Decision Ltr, 10/21/2016 AR 1903-1913. During the interim period, the CAC gave Jackson the benefit of the doubt and granted him a "disabled" status so that he could receive benefits. *Id.* But, the CAC did not reject the MCR's conclusions as to Jackson's *physical* abilities. AR 1889, at p. 4 ("the CAC did not find you medically impaired by any of your multiple medical conditions, though [it] needed to rule out that you were not psychiatrically impaired"). In fact, the CAC had by that point gathered and considered additional physical evidence obtained after the MRC's first review in September 2015. *Id.*, p.

---

[4] Key materials reviewed by the MRC initially included Jackson's claim forms (AR 426-427, AR 3780-3784, and AR 1970-1972); Dr. Lee's statement (AR 1970-1971); Dr. Nicola's two reports following his file review and analysis (AR 198-201); the FCE (AR 431-446); and the Transfer Skills Analysis (AR 1841-1848).

8

3, AR 1888 (*e.g.* noting an Independent Medical Examination by a Dr. Neil Friedman on December 4, 2015, who did not identify a physical disability).

*April 2016 - Second MRC Decision*: The psychiatric evaluation took place on March 10, 2016. Second MRC Decision Ltr, 4/7/2016, p. 4, AR 1889.   The physician, Dr. Jeffrey Kezlarian, concluded that Jackson had mild depression, but that it did not prevent or seriously limit Jackson's ability to work. *Id.*  The MRC considered this new information in April 2016, along with all of the other new medical data that had been gathered since the MRC first evaluated the issue in September 2015.[5] *Id.*  The MRC again denied the claim based on a review of the totality of the evidence.  The committee believed that while Jackson presented with a number of individual conditions and symptoms, there simply was insufficient evidence. *Id.*

*October 2016 - Second CAC Decision*: Jackson appealed the renewed denial to the CAC.  The CAC again evaluated all of the information reviewed by the MRC, plus *new* medical records and reports provided by Jackson's physicians in

---

[5] In addition to what it had reviewed previously (*see, supra,* Footnote 4), key materials reviewed by the MRC during its second evaluation included additional notes from Dr. Terry Nicola dated November 4, 2015 (AR 279-281); the IME report and addendum from Dr. Neil Friedman, M.D., dated December 8, 2015 and December 16, 2015 (AR 220-225; 233-234)); file review notes from Dr. Gilbert Hefter, M.D. in January 2016 (AR 273-275); the IME psychological report from Dr. Jeffery A. Kezlarian, M.D. (AR 227-232); and an updated Transfer Skills Analysis as of April 2016 (AR 1826-1832).

9

support of his new appeal. Second CAC Decision Ltr, 10/21/2016 AR 1903-1912.

The CAC did not stop there; it obtained a new assessment of the medical evidence

from Dr. Luc D. Jasmin, MD, PhD, a board-certified physician in neurological

surgery.[6]   The CAC re-considered the entire history of the claim, all of the

evidence provided in relation to it, and ultimately concluded that Jackson had not

carried his burden of proving a disability. *Id.*  His self-reported symptoms of pain

due to his back conditions, his diabetes, and his assertions of fibromyalgia were not

sufficient objective proof of a totally disabling condition.

*July 2017 - Final Decision*: Jackson initiated his final appeal in a letter

dated April 17, 2016, and once again submitted more material. *See* Broadspire

Final Ltr, 7/24/2017 (AR 1929-1931). The Program (now administered by

Broadspire) likewise elicited even more data as well, including three (3) more peer

reviews by board-certified physicians in the fields of neurological surgery,

anesthesiology, and psychiatry. *Id.*  Each of the new peer reviewers evaluated the

file anew and determined – with respect to their discipline – that Jackson was not

disabled.[7] *Id.* The Program advised Jackson of the decision in yet another detailed

---

[6] Dr. Jasmin's report is at AR 1914-1921.

[7] The reports of the three additional peer reviewers considered by Broadspire are in the AR as follows: Dr. Phillip Williams, M.D. (Neurosurgery) (AR 2673-2679); Dr. Chirag Raval, M.D. (Psychiatry) (AR 2680-2687); and Dr. Stanley Yuan, M.D. (Anesthesiology) (AR 2688-2697).

10

letter, which summarized the new opinions and distinguished the Jackson's submissions.

***This Lawsuit***: Mr. Jackson filed suit on August 5, 2017, based on Section 502(a) of ERISA, 29 U.S.C. §1132(a). Complaint, Doc #1. The sole claim is for denial of benefits. *Id*. The parties obtained and exchanged the AR and the Court set a briefing schedule.  Under *Wilkins v. Baptist Healthcare Systems, Inc.*, 150 F.3d 609 (6th Cir. 1998),  the matter should be determined upon submission of cross motions for judgment on the record.  There are no threshold or procedural issues for the Court to consider. Thus, this matter is ripe for a decision on the merits.

## III.   STANDARD OF REVIEW

A denial of benefits challenged under ERISA is subject to the arbitrary and capricious standard where, as here, the program gives the administrator discretionary authority in interpreting the program. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 983 (6th Cir. 1991).  The applicable Program documents here grant the Program administrators complete discretion.  In fact, this point is emphasized repeatedly. Program Documents, ¶1.4 p. 3, (section regarding "Administration") and ¶6.5 p. 48 (section regarding "Claims Process"), AR 2377-2442; *see also* Summary Description, p., 8 ("Participant Obligations"), AR 2443-2481.

11

The arbitrary or capricious standard is highly deferential and the least demanding form of judicial review of administrative action. *Davis By & Through Farmers Bank & Capital Trust Co. of Frankfort, Ky. v. Ky. Fin. Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989). Under this standard, the determination of an administrator will be upheld if it is "rational in light of the plan's provision." *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064 (6th Cir. 2014) (quoting *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 457 (6th Cir. 2003)). This means that a claim administrator's decision is not arbitrary and capricious if it "is based on a reasonable interpretation of the plan." *Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 933-34 (6th Cir. 2000). Moreover, a "decision reviewed according to the arbitrary and capricious standard must be upheld if it results from a deliberate principled reasoning process and is supported by substantial evidence." *McClain*, 740 F.3d at 1064. (quoting *Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 308 (6th Cir. 2010) (internal quotation marks omitted). The Court must review "the quantity and quality of the medical evidence and the opinions on both sides of the issue" to determine whether a reasoned explanation exists to support an administrator's decision. *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003).

12

In practice, this means this lawsuit is not meant to be a re-do of the Program's decision-making, but rather a check on the process that led to it. The idea is not to give Jackson a shot at changing the decision merely by changing the decision-maker. Rather, he must prove that something went awry in the appeal process. And the standard does not require that the Court personally agree with all of the factual support for the decision in order to uphold it. One could conclude that he or she would have weighed facts differently had they been in the Program administrators' place, yet likewise conclude that Jackson has failed to prove the decision is arbitrary and capricious. That is because reasonable minds can differ relative to a decision, and yet neither side's viewpoint is so deficient as to be deemed "arbitrary and capricious" and contrary to law.

## IV.   ARGUMENT

This case centers on Jackson's failure to meet his burden to persuade the Program administrators through objective proof that he has a total disability. ERISA program document provisions that place the burden on the claimant to prove the existence of a disability based on objective medical evidence are legitimate and enforced by courts. Indeed, courts affirm claim denials where the claimant's symptoms are subjective and self-reported without sufficient *objective*, medical evidence to support the claim for disability. *See e.g.*, *Huffaker v. Metropolitan Life Ins. Co.*, 271 Fed.Appx. 493 (6th Cir. 2008) (denial of claim

13

based fibromyalgia symptoms was not arbitrary and capricious where the claimant failed to persuade the plan with objective medical evidence); *Blount v. United of Omaha Life Ins. Co.*, 2016 WL 4191725, *5 (M.D. Tenn., August 8, 2016) (affirming denial where claimant's record did not establish objective proof of a disability based on a lupus diagnosis). That is the situation we have here; as explained below, Jackson reported symptoms of pain due to back issues and fibromyalgia but failed to carry his burden of providing persuasive objective proof that these conditions prevented him from working as a Customer Service Representative or in a comparably compensated "sedentary" position.

The issues are addressed in three sections. First, in Section IV(A), we demonstrate that the Program's decision-making was thorough and that the record provides ample support for the Program's conclusion that Jackson failed to carry his burden. Second, in Section IV(B), we explain the fallacy of his arguments that the Program erred by not accepting the opinion of his treating physician or other purportedly supporting evidence. And finally, Section IV(C) establishes that it is legally immaterial that the Program provided Jackson with disability benefits at one point in time, and then ultimately denied the claim going forward.

14

A.   **The   Decision-Making   Process   was   Thorough   and   a "Reasoned Explanation Exists to Support" the Program's Decision.**

The record reveals an extensive process and ample evidence from which a reasonable person exercising discretion could deny the claim.

   1.   *Process: Jackson was given a full and fair opportunity to develop the record and to try and prove his claim.*

The Program administrators afforded Jackson all of his rights in the appeal process and he fully availed himself of the opportunities, resulting in an extraordinarily fulsome record.  The AR itself consists of two banker's boxes when printed. It includes medical records from physicians that treated or consulted with Jackson, IME and peer review reports, numerous letters between the Program and Jackson or his attorney, diagnostic and lab reports, physician notes, physician correspondence, Functional Capacity Evaluations, and skills assessment reports.

Indeed, the Program made its final decision only after considering opinions or materials gleaned from nearly a dozen medical professionals. This included Jackson's own treating physicians, two (2) physicians who conducted independent medical examinations ("IMEs") of Jackson personally, the peer review opinions of six (6) other physicians who reviewed the medical records, and the assessment of functional capacity evaluators. *See, e.g.,* Second CAC Decision Ltr, AR 1903-1913; and Broadspire Final Decision Ltr, AR 1929-1931.

15

And there is no dispute that Program decision-makers drilled into the AR in considerable detail.   The respective MRC, CAC and Broadspire decisions all highlight nuanced details that could be discerned only upon an exhaustive review of the underlying materials.   It likewise is beyond dispute that the Program considered evidence Jackson himself submitted. Finally, the Program was transparent about what it reviewed and considered. Program representatives sent him the file material, and his attorney had the opportunity - of which he repeatedly availed himself - to comment on the evidence during the appeal process.

Nor may Jackson take issue with any particular committee's decision-making throughout the appeal process. The ultimate issue in an ERISA denial case is not whether discrete acts by plan administrators are arbitrary and capricious but whether the ultimate decision denying benefits failed this standard. *See Spangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d 356, 362 (6th Cir. 2002) (reversal of denial was justified based on the overall record and not simply on the specific flaw of failing to provide the file reviewer with all material information); *Blount v. United of Omaha Life Ins. Co.*, 2016 WL 4191725, *5 (M.D. Tenn. August 8, 2016).   Here, Broadspire's final decision was based on the overall record; it was not a proverbial "rubber stamp," such that one credibly could argue that it perpetuated some perceived error by the MRC or CAC. To the contrary, it

16

considered additional evidence gathered after committees made their initial decisions. *Id.*

In sum, this is not a case where Jackson credibly could argue the Program failed to follow its process, declined to consider evidence, or made the decision in haste based on incomplete data. Plaintiff is left with the uphill climb of arguing the ultimate merits of the decision itself was arbitrary and capricious - in other words, it is not rational based on the program document's provisions.  As described in more detail below, Plaintiff cannot meet this burden.

2. *Evidence: The Administrative Record is fulsome and replete with information from which a reasonable person could rely on to deny the claim.*

The crux of Jackson's claimed disability – pain – is based on subjective and self-reported symptoms. That means that physicians necessarily must look beyond his own characterization to discern the existence of an underlying disability. Here, no one disputes that he presented to various physicians over the years with various pain-related symptoms based on his 2006 car accident and fibromyalgia. Yet conditions associated with chronic pain *are knowable* to experts in the field, and in this instance, there was insufficient *objective* evidence to find a disability due to his back issues, fibromyalgia, or even diabetes.

The difference between subjective characterizations and objective medical facts is typified by a Functional Capacity Evaluation that was performed to assess

17

Jackson's ability to various tasks associated with his type of work.   Therapist David W. Goldenbogen, DPT, conducted the evaluation on September 2, 2015. Overall, the FCE objectively revealed that Jackson "demonstrates the physical capabilities and tolerances to function at the Sedentary physical demand level" and was "functionally employable at this time." FCE, 9/2/2015, p. 1, AR 431-446. Jackson met 88.89% of job demands. *Id.*   Although Jackson did not demonstrate physical capabilities and tolerances to perform "*all*" of the essential job functions of a customer service representative, there was a simple reason for this: Mr. Goldenbogen determined that the overall results did not represent a true and accurate representation of Jackson's capabilities *because Jackson clearly held back during the testing*.   The evaluation is designed to identify this possibility.   Here, Jackson exhibited significant "inconsistent performance/unacceptable effort." *Id.* The reality is that Jackson was "capable of greater functional abilities" than he demonstrated.[8] *Id.*   Jackson's subjective efforts did not match the objective proofs.

---

[8] Jackson had a second FCE in early 2017 at the request of Jackson's counsel, and the results were provided to the Program in support of his appeal. *See* Active Functional Testing, LLC Report, 2/9/2017, AR5299-5327.   Although the report notes his conditions and pain and indicates that it "would be difficult to perform regular job duties," overall it supports the premise that Jackson can perform sedentary and light duty work. *Id., see also*, Dr. Williams' Report, 9/18/17, p. 6 AR 2673-2679 (Dr. Williams is a neurosurgeon who evaluated this second FCE and did not believe the results supported a disability finding).

18

The lack of reliable, objective evidence was noted by multiple physicians who evaluated Jackson personally and/or the medical record. A prime example is the opinion of Dr. Neil A. Friedman, M.D., a board-certified specialist in Physical Medical & Rehabilitation, who conducted a thorough physical evaluation of Jackson and his medical records in December 2015. Dr. Friedman acknowledged Jackson's history of back issues and the results of the FCE yet did not believe that the conditions and test results supported "significant medical impairments" or "barriers to this individual's ability to sustain employment." Friedman Report, 12/8/2015, p. 5, AR 220-225. Indeed, in response to follow-up questions from the Program, Dr. Friedman specifically opinioned that Jackson had the ability to sustain a sedentary level of employment even with his back conditions. Friedman Addendum Report, 12/16/2015, AR 233-234.

Other experts who reviewed Jackson's file at different times over a nearly two-year span concurred that he was not disabled:

- Dr. Terry L. Nicola, M.D., reviewed Jackson's file, the records of Jackson's own physician, the results of the fall 2015 FCE, and concluded that there was no objective evidence supporting a disability status at that time. *See* Nicola report, AR 198-199 ("The above testing and examination does not show any reliable/consistent evidence of a physical deficit from sedentary level activity.")

- Dr. Jeffrey Kezlarian, M.D., did an IME on Jackson in March 2016, in order to assess his psychiatric condition. *See* Kezlarian Report, 3/14/2016, p. 5 AR 227-232. Dr. Kezlarian did not "find any emotional or cognitive impairments that would prevent or seriously limit Mr. Jackson's ability to work with or without restrictions." *Id.* He was "dysphoric and a bit unhappy, but not particularly depressed." *Id.* Dr. Kezlarian also noted that Jackson had personal issues

19

involving relationships in his life, and he did not "seem to be strongly motivated to return to work." *Id.*

- Dr. Luc D. Jasmin, M.D. evaluated all of the medical files and evidence in October 2016, including notes from Jackson's physician, Dr. Lee. Jasmin Report, 10/18/2016, p. 7, AR 1914-1921. Dr. Jasmin opined that Dr. Lee's "disability" opinion was conclusory, as there was no "reliable, valid and reasonably compelling evidence that [Jackson] has impairments preventing him from his physical demand levels of the job.. ." *Id.*

- Dr. Phillip Williams, M.D. (Neurosurgery) reviewed the entire file and focused on MRIs and other evidence related to Jackson's spine and disk issues. Williams Report, p. 6, 7/18/2017, AR 2673-2679. Dr. Williams indicated that although MRI results "revealed degenerative disc disease at C3-4 and C5-6L-4-5 and also at "L4-5 and with right neural foraminal narrowing," this was not considered disabling. He expressly rejected Dr. Lee's opinions, finding that it was "not supported by the medical documentation provided for review." *Id.*

- Dr. Stanley Yuan, M.D. (Anesthesiology) likewise reviewed all of the medical evidence. Yuan Report, 7/18/2017, p. 9, AR 2688-2697. He noted that the "documentation for this claimant as it relates to a neurosurgical/pain management perspective is extensive." Based on all of this, he opined that Jackson "does not have medically supported restrictions and limitations from a pain management" perspective, and that his "symptoms have been stable . . . with no significant changes." *Id.* Dr. Yuan believed that Jackson "should be able to complete his job duties." *Id.*

- Dr. Chirag Raval, M.D. (Psychiatry) affirmed the opinions of Dr. Kazlarian relating to Jackson's psychiatric condition. Raval Report, 7/18/2017, p. 7, AR 2680-2687 (the "clinical records in this case would not support the need for specific disability attributed to psychiatric diagnosis").

Based on this record, there can be no dispute that a "reasoned explanation" exists for the Program's decision. *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003). Indeed, the Administrative Record is virtually devoid of any *objective* medical evidence to support Jackson's argument that he is medically

20

disabled.  At best, he has had ongoing, but manageable, pain-related symptoms that do not prevent him from working in a sedentary position.

### B.    That Some Evidence Supports Plaintiff Does Not Render the Ultimate Decision Arbitrary and Capricious.

Jackson will highlight the views of his own physicians and argue that they support his position.  Yet it was not arbitrary and capricious for the Program to disagree with Plaintiff's treating physicians' opinions, particularly given the extensive contrary opinions of other physicians and experts.  It is settled that ERISA plans are not bound by the opinions of a participant's own physicians. *Whitaker v. Harford Life and Acc. Ins. Co.*, 404 F.3d 947 (6th Cir. 2005) (citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003).  Programs may instead rely on physician opinions retained to conduct examinations, even when those physicians disagree as to the existence of a disability. *Huffaker v. Metropolitan Life Ins. Co.*, 271 Fed.Appx. 493 (6th Cir. 2008) (not arbitrary and capricious for plan to rely on opinions other than the treating physician); *Wooden v. Alcoa, Inc.*, 511 Fed.Appx. 477 (6th Cir. 2013) (proper to credit the opinions of multiple physicians over the plaintiff's treating physician in denying a claim).  This is consistent with the principle that a court must accept an administrator's rational decision, if it is not arbitrary or capricious, even in the face of an equally rational interpretation offered by a participant. *Gismondi v. United Techs. Corp.*, 408 F.3d 295, 298 (6th Cir. 2005).  Here, the fact

21

that his treating physicians were at odds with other, contrary evidence is a sufficient and legitimate reason to reject their opinions.

And Jackson also might point to the FCE reports and note that they support the premise that Jackson has at least some limitations. Yet the overall concerns with Jackson's effort during the FCE were explained above. The FCE evaluators found that overall Jackson could work even despite the fact that Jackson had exhibited uneven effort (at best) during the evaluation. But in any event, the mere fact that *some* evidence arguably supports a disability status is not determinative; the record need not be one-sided for the Program to deny a claim given that Jackson has the burden of proof. Specifically, Jackson must demonstrate with "**objective** medical evidence" that he is "wholly prevented, by reason of mental or physical disability, from engaging in any occupation comparable to the occupation in which he or she was engaged for the Participating Employer at the time of, or immediately prior to the claimed onset of his or her Disability." Program Documents, ¶3.1(a) p. 11-12, AR 2377-2442.

Moreover, the Program Documents give the administrators the "sole discretion" to make factual determinations of eligibility. *See* Program Documents, ¶1.4 p. 3, (section regarding "Administration"), AR 2377-2442. Thus, it was within the Program Administrator's discretion to disregard Plaintiff's subjective opinions and beliefs of his claimed disability status, particularly given that Jackson himself

22

did not present a fair view of his capabilities during certain testing. *See Wooden, supra, Huffaker, supra,* and *Frazier v. Life Ins. Co. of North America, 725 F3d 560, 567 (6th Cir. 2013),* (holding that it was not arbitrary and capricious for an insurer to rely on the full record to make a determination rather than "simply relying on [claimant's] stated pain levels").   Indeed, the evidence supporting Jackson was not strong in any event. The Program administrators correctly noted that Jackson worked for many years with the very conditions for which he now argues render him disabled.

### C.   The Fact That the Program Provided Benefits at One Point During the Appeal Process is Legally Immaterial.

Plaintiff might note that the CAC directed that benefits be paid in early 2016 while more information was being gathered, potentially as support for the premise that there was evidence of a disability determination.  This issue is immaterial for two reasons.  First, the payment of benefits was temporary due to the need for a psychiatric examination.  The CAC was merely reacting to information that had been gathered as of a point in time and wanted to rule out a potential disability on psychiatric needs.   But Plaintiff himself never claimed a disability due to psychiatric issues and never proved one.  The Program was merely giving him the benefit of the doubt in this regard based on information it had received.  Once the psychiatric examination ruled out a disability, that particular issue was moot, and

4821-0694-6907, v. 1

the Program proceeded yet again to evaluate his claim based on his physical conditions. *See* Kezlarian Report, 3/14/2016, p. 5 AR 1940-1945.

Second, even if the initial payment and then reversal could be characterized as a change in internal decision-making, this is not unusual – let alone improper – given that the Program must assess new information as it becomes available and that the Plaintiff carries the burden even after an initial decision is made. Section 4.2(c)(iv) of the Program Documents clearly shows that a disability determination is continual regardless of an initial determination. That section provides in pertinent part, as follows:

> If [the Program] determines that the Participant is no longer Disabled or is otherwise no longer eligible for benefits, hereunder, all further Disability Benefits shall cease effect with the first day of the month in which NEBA or the NEBC, as the case may be, determines that such change in Disability or eligibility status first occurred. . .

*See* Program Documents, ¶4.2(c)(iv), AR 2408 (emphasis added); *see also*, *Dix v. Blue Cross and Blue Shield Ass'n Long Term Disability Program*, 613 Fed.Appx. at 293 (5th Cir. 2007) (upholding denial in a case where the Program initially accepted the claim because the medical evidence no longer supported the disability determination). The Program need not, for example, wait for a claimant's condition to "improve" in order to change an acceptance to a denial, as long as there is a sound basis for doing so. *Godmar v. Hewlett-Packard Co.*, 631 Fed. Appx. 397, 401-402 (6th Cir. 2015) (rejecting the proposition that without

24

improvement, a subsequent denial of benefits was arbitrary and that "when an administrator evaluates whether further benefits are appropriate, 'the ultimate question is whether the plan administrator had a rational basis for concluding that [the claimant] was not disabled **at the time of the new decision.**'")

Therefore, it is absolutely permissible to deny a previously accepted claim where, after an initial approval, the plan administrator receives additional evidence that shows the claimant is not disabled and there is a rational basis for the administrator's new decision. *See, Gilrane v. Unum Life Ins. Co. of America*, 2017 WL 4018853 at *10 (E.D. Tenn., September 12, 2017) finding that a "rational basis [for the later denial] does not necessarily have to be predicated on evidence of improvement; it can also be founded on new information about the participant's condition). In light of this settled law, the mere fact that the Program gave Plaintiff the benefit of the doubt and paid benefits for a period of time is wholly immaterial.

## V.    CONCLUSION

Plaintiff cannot satisfy his burden of showing that the Program administrator's decision was arbitrary and capricious given the Administrative Record in this case.  The Court should enter judgment in Defendant's favor.

Respectfully submitted,

*/s/Benjamin W. Jeffers*

DATED:      February 9, 2018        Benjamin W. Jeffers (P57161)

4821-0694-6907, v. 1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **February 9, 2018** my assistant electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

> */s/Benjamin W. Jeffers*
> Benjamin W. Jeffers (P57161)
> Attorneys for Defendant
> Hickey Hauck Bishoff & Jeffers, PLLC
> One Woodward Avenue, Suite 2000
> Detroit, MI 48226
> (313) 964-9019 (direct dial)
> bjeffers@hhbjlaw.com