UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MARC JACKSON,

      Plaintiff,

v.                                                                          Case No. 17-12537


BLUE CROSS BLUE SHIELD OF                          HON. AVERN COHN
MICHIGAN LONG TERM DISABILITY
PROGRAM,[1]

      Defendant.

_____/



**MEMORANDUM AND ORDER**
**GRANTING DEFENDANTS' MOTION FOR JUDGMENT (Doc. 11)**
**AND**
**DENYING PLAINTIFF'S CROSS MOTION FOR JUDGMENT (Doc. 10)**
**AND**
**DISMISSING CASE**

---

[1]Jackson named Blue Cross Blue Shield of Michigan as defendant. The parties have stipulated that the correct entity is Blue Cross Blue Shield of Michigan Long Term Disability Program. See Doc. 15. Defendant will be referred to as "the Plan."

# **TABLE OF CONTENTS**

I.      Introduction                                                                    1

II.     Summary of Key Medical Evidence                                 1

III.    Legal Standard - ERISA Motion for Entry of Judgment      3

IV.     Standard of Review                                                    4

V.      Findings of Fact                                                            5
        A.      Overview of Jackson's Claim                               5
        B.      Relevant Plan Provisions and Review Process        6
        C.      Review of Jackson's Claim                                   8
                1.      September 2015 - First MRC Decision         8
                2.      January 2016 - First CAC Decision             9
                3.      April 2016 - Second MRC Decision            10
                4.      October 2018 - Second CAC Decision        11
                5.      July 2017 - Final Decision                        11

VI.     Conclusions of Law                                                    12
        A.      No Conflict of Interest                                        12
        B.      Subjective Pain and Objective Medical Evidence    13
        C.      Full and Fair Review                                          16
                1.      Reasonable Process                               16
                2.      Evidence Supporting Plan's Decision          17
                3.      Evidence Favorable to Jackson                  21
                4.      Prior Award of Benefits                          22

VIII.   Conclusion                                                             23

i

## I.  Introduction

This is a benefits case under the Employment Retirement Income Security Act, 29 U.S.C. § 1001, et seq (ERISA).  Plaintiff Marc Jackson worked for Blue Cross Blue Shield of Michigan for 24 years, most recently as a Customer Service Representative. As part of his employment, Jackson was covered under a long term disability plan called the Blue Cross Blue Shield Association Long Term Disability Program, which later became the Blue Cross Blue Shield Michigan Long Term Disability Program (the Plan) which is governed by ERISA.  Jackson stopped working in 2014 and sought long term disability (LTD) benefits due to back pain and fibromyalgia and, secondarily, diabetes. Jackson said his back and other pain stems from a May 2006 car accident and noted he had back surgery in 2010.  The Plan denied benefits essentially due to the lack of objective medical evidence to support Jackson's complaints of pain.  After exhausting his administrative remedies, Jackson sued the Plan claiming a violation of 29 U.S.C. § 1132(a)(1)(B).

Before the Court are cross motions for judgment.  For the reasons that follow, Jackson's motion will be denied and the Plan's motion will be granted.  In sum, the Plan considered the voluminous medical record and medical opinions and reasonably concluded that Jackson had not satisfied his burden of proof.

## II.  Summary of Key Medical Evidence

Due to the sheer volume of the administrative record,[2] which is the largest the

---

[2]The administrative record has been lodged with the Court but not filed in the ECF system.  The record is contained in ten (10) three ring binder notebooks.  The Plan also provided the Court with an electronic copy on a removable device.

undersigned has encountered in an ERISA denial of benefits case, it is helpful to summarize the key medical evidence in the administrative record.

Jackson's treating physicians, Dr. Lee, a neurologist, and Dr. Sack, a primary care physician, submitted documents indicating Jackson could not work.

The Plan had Jackson undergo an in-person Transferable Skills Analysis (TSA) in September in 2015 which concluded Jackson was "holding back" as to his ability to function and that he could complete 90% of the tasks of his job. The Plan also reversed the initial denial of benefits in order to determine if Jackson had a psychiatric disability, even though Jackson did not claim such a disability. The Plan directed Jackson to an independent in-person medical exam (IME) with a psychiatrist (Dr. Kezlarian) and with a physical medicine and rehabilitation physician (Dr. Friedman). Both opined Jackson was not disabled either psychiatrically or physically. The Plan also had Jackson undergo an updated TSA in April of 2016. Although Jackson's doctor interpreted the updated TSA as indicating he could not work, Plan physicians interpreted it otherwise. In addition to the two IMEs, the Plan had Jackson's claim examined by several physicians who reviewed the record, i.e. a file review. They are as follows:

Dr. Nicola (physical medicine and rehabilitation - found Jackson was not disabled but ordered an IME)

Dr. Hefter (psychiatrist - ordered the psychiatric exam)

Dr. Luc (neurologist - found Jackson not disabled, was unable to speak with Jackson's treating neurologist, Dr. Lee, because he did not return Dr. Luc's calls)

Dr. Williams (neurologist - found Jackson not disabled)

Dr. Yuan (anesthesiology - found Jackson's complaints of pain not disabling)

Dr. Raval (psychiatrist - found Jackson not disabled)

### III.  Legal Standard  - ERISA Motion for Entry of Judgment

Section 502 of ERISA permits a plaintiff to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

In Wilkins v. Baptist Healthcare System, Inc., 150 F.3d 609 (6th Cir.1998), the Court of Appeals for the Sixth Circuit held that summary judgment procedures are not appropriate in the Sixth Circuit in denial of benefits actions under ERISA.  Rather, a district court should adjudicate an ERISA action as if it were conducting a standard bench trial and, therefore, determining whether there is a genuine issue of fact for trial would make little sense.  Wilkins, 150 F.3d at 618-19 (Gilman, J., concurring in part and setting out the judgment of the court of appeals on the issue regarding the summary judgment standard).

Accordingly, the Court will decide this matter under the guidelines set forth in Wilkins[3] by findings of fact and conclusions of law based solely upon the administrative

---

[3]  The court of appeals' "Suggested Guidelines" are as follows:
1. As to the merits of the action, the district court should conduct a de novo review based solely upon the administrative record, and render findings of fact and conclusions of law accordingly.  The district court may consider the parties' arguments concerning the proper analysis of the evidentiary materials contained in the administrative record, but may not admit or consider any evidence not presented to the administrator.
2. The district court may consider evidence outside of the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part.  This also means that any prehearing discovery at the district court level should be limited to such procedural challenges.
3. . . . the summary judgment procedures set forth in Rule 56 are

record.  See Eriksen v. Metropolitan Life Ins. Co., 39 F. Supp. 2d 864 (E.D. Mich. 1999).

IV.  Standard of Review

The parties agree that the standard of review is whether the denial of benefits was arbitrary and capricious because the Plan has discretionary authority to construe and interpret the provisions of the pension plan.  See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Miller v. Metropolitan Life Ins. Co., 925 F.2d 979, 983 (6th Cir. 1991).  Arbitrary-and-capricious review is very deferential.  "Under the arbitrary-and-capricious standard, we must uphold the plan administrator's decision if it is 'the result of a deliberate, principled reasoning process' and 'supported by substantial evidence.' "  Shaw v. AT & T Benefit Plan No. 1, 795 F.3d 538, 547 (6th Cir. 2015) (quoting DeLisle v. Sun Life Assurance Co. of Canada, 558 F.3d 440, 444 (6th Cir. 2009)).  Review, however, "is not a 'rubber stamp of the administrator's decision.' " Cooper v. Life Ins. Co. of N. Am., 486 F.3d 157, 165 (6th Cir. 2007) (quoting Jones v. Metro. Life Ins. Co., 385 F.3d 654, 661 (6th Cir. 2004) (alteration adopted) ).  A determination of a plan administrator will be upheld if it is "rational in light of the plan's provisions" McClain v. Eaton Corp. Disability Plan, 740 F.3d 1059, 1064 (6th Cir. 2014) and is "based on a reasonable interpretation of the plan."  Shelby Cnty. Health Care Corp. V. S. Council of Indus. Workers Health & Welfare Trust Fund, 203 F.3d 926, 933-34 (6th Cir. 2000).

The Sixth Circuit has said the Court must look at several factors to evaluate the

inapposite to ERISA actions and thus should not be utilized in their disposition.
150 F.3d at 619.

rationality of the administrator's decision-making process: "the quality and quantity of the medical evidence; the existence of any conflicts of interest; whether the administrator considered any disability finding by the Social Security Administration; and whether the administrator contracted with physicians to conduct a file review as opposed to a physical examination of the claimant." Shaw, 795 F.3d at 547 (quoting Fura v. Fed. Express Corp. Long Term Disability Plan, 534 F. App'x. 340, 342 (6th Cir. 2013) (internal quotation marks omitted) ).

## V.  Findings of Fact

The following facts are gleaned from the administrative record (AR).

### A.  Overview of Jackson's Claim

Jackson worked for non-party Blue Cross Blue Shield of Michigan for approximately twenty-four years until December 23, 2014.  He was a Customer Service Representative, with job duties he described as handling calls, assigning cases, and acting as department liaison.  It was a "sedentary" position, as defined in the Dictionary of Occupational Titles.  See TSA by Momentum Healthcare, Inc., 9/15/2015, p. 2, AR 1841- 1848. ["Sedentary work involves exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently to lift, carry, push, pull or otherwise move objects, including the human body.  Sedentary work involves sitting most of the time but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally, and all other sedentary criteria are met." Id., and p. 3-5 (listing the BCBSM Customer Service Representative job expectations).]

In July of 2015, Jackson applied for LTD benefits, claiming he was unable to

work due to back pain and fibromyalgia, as well as diabetes.[4]  His claim form identifies

"5 disc herniations 3 in my cervical, 2 in my lumbar; fibromialgia [sic]" and "diabetes and

diabetic neuropathy."  See " LTD-2," AR 3 780-3784.  Jackson noted the injury that led

to his back pain first occurred in May 2006, when he was involved in a car accident.  Id.

Jackson also noted that he had disc decompression surgery in April 2010, recovered,

and returned to work.

B.  Relevant Plan Provisions and Review Process

Section 3.1 of the Plan provides that a participant must provide "objective

medical evidence" that he or she is unable to perform work up to the applicable

Disability standard.  See Plan Documents, § 3.1 p. 10-11, AR 2377-2442.  A participant

"must establish to the satisfaction of NEBA or NEBC, as the case may be, that he or

she is wholly prevented, by reason of mental or physical disability, from engaging in any

occupation comparable to the occupation in which he or she was engaged for the

Participating Employer at the time of, or immediately prior to the claimed onset of his or

her Disability."  See Plan Documents, § 3.I(a) p. 10, AR2377-2442; see also Summary

Plan Description, p. 7, AR2 443-2481

The participant's burden is further explained in Section 3.2 of the Plan

---

[4]As the Plan explains, Jackson's claim decisions initially were made by representatives working on behalf of the Blue Cross Blue Shield Long Term Disability Association Program's National Employee Benefits Committee (NEBC), which served as the plan administrator and named fiduciary for employee benefit programs of the independent BCBS companies that elect to utilize the manager services offered by the Association through the National Benefits Administration Department (NEBA).  The AR was developed and compiled largely by individuals working on behalf of the NEBC. After a spinoff in January of 2017, the final review and decision was made by representatives of Broadspire, the Plan's third-party administrator, in July 2017.

documents.  <u>See</u> Plan Documents, at § 3.2 pp. 11-15.  Section 3.2 initially explains

again that, overall and generally, the participant has the general burden of proof.  <u>Id</u>. at

§ 3.2(a) p. 12.  And then specifically, the participant has the burden to persuade the

Plan through objective medical and other evidence that (I) he or she has a disabling

mental or physical condition, (ii) he or she cannot perform work described in the

applicable performance or occupational standard, and (iii) there is a causal connection

between the claimed disability and their inability to work. <u>Id</u>. at § 3.2(b)(i-iii), pp. 12-13.

Finally, a claimant's burden of proof as to any disabled status is continuing even if the

Plan initially accepts a claim.  Under Section 4.2(c)(iv), if the Plan determines that the

participant is no longer disabled or is otherwise eligible for benefits, all further benefits

shall cease effect with the first day of the month in which they made such a

determination. <u>Id</u>.

The Plan has three stages of administrative review.  For Jackson's claim, the first

two stages were handled by the Blue Cross Blue Shield Association Long Term

Disability Program (the Association) prior to a spinoff in January 2017.  <u>See</u> n. 4, <u>supra</u>.

The first decision-maker was a committee called the Medical Review Committee (MRC).

Appeals from an MRC decision go to the Claims Appeal Committee (CAC).  Finally,

although an Association official would have handled any final (and third) appeal stage,

the final decision here was handled by third-party administrative professionals at

Broadspire due to the spin-off.  The decisions by the Association committees, MRC and

CAC, and Broadspire administrative are discussed below.

### C.  Review of Jackson's Claim

Jackson's claim was reviewed five times, as explained below.

### 1.  September 2015 - First MRC Decision

The MRC reviewed Jackson's short-term disability file, claim forms, attending physician statements from Dr. Kevin Lee (neurologist) and Dr. Marshall B. Sack (primary doctor), multiple years of medical records; the TSA of September 2, 2015; the opinions of Dr. Terry L. Nicola, M.D., a board-certified physician in Physical Medical and Rehabilitation who conducted a file review, and the TSA of September 15, 2015.

The MRC issued a letter dated September 16, 2015, concluding Jackson was not disabled.  See First MRC Decision Letter, 9/16/15, AR 1873-1881.  The denial letter explained that it relied upon Dr. Nicola's opinion after his file review, noting that Dr. Nicola concluded that the "testing and examination does not show any reliable/consistent evidence of a physical deficit from sedentary level activity."  Id., p. 4, AR 1876.  The MRC also relied on Dr. Nicola's analysis that while Jackson had begun to encounter back pain as of 2006 (eight years prior to him leaving work) and had a procedure for it in 2010, these problems did not manifest into a new and disabling condition relative to his work until 2014.  Id., pp. 2-3.  This, according to Dr. Nicola, was evidenced by the September 2015 TSA, which showed that Jackson could complete almost 90% of the tasks associated with his type of work, and even then, he had dramatically downplayed his own abilities during the TSA evaluation.  Id., p. 3. (noting that the TSA "analysis showed an inconsistent performance/unacceptable effort" of 33% during the testing); and see TSA dated 9/2/15, AR 431-446.  The MRC concluded that Jackson was not disabled.  AR 1876, p. 4 ("the current objective medical evidence does not support that you are unable to function in your activities of daily living or perform a

sedentary level job").

Relevant portions of the MRC's decision state as follows:

> The MRC notes (from your LTD-2) form that your alleged illness began or injury occurred that developed into your inability to work on May 21, 2006. Current medical records available to the MRC do not indicate a disability. Your providers have not documented physical impairments which support that you are unable to function on a daily basis. There are only your complaints of back pain and fibromyalgia. The medical information shows that you have participated in many conservative treatment measures which have helped. Also, much of the documentation shows that your level of pain is frequently "weather related."
> ...
> In summary, Dr. Nicola wrote that he does not have sufficient evidence to recommend a disabled status for sedentary work. The testing and examination does not show any reliable/consistent evidence of a physical deficit from sedentary level activity. Dr. Nicola went on to state that Dr. Lee wrote the only statement of disability, and he stated the "work place put patient on disability." There is no recent evidence of physical examination sufficient to recommend disability.

AR 1857-1876.

### 2. January 2016 - First CAC Decision

Jackson appealed the MRC's decision to the CAC. In a short letter dated January 27, 2016, the CAC overturned the First MRC Decision. See First CAC Decision Ltr, 1/27/16, AR 1882-1885. Subsequent letters from the Plan explain the reason for the reversal - the CAC wanted to determine whether Jackson had a psychiatric disability. See, e.g., Second MRC Decision, 4/7/2016, AR 1886-1895; see also Second CAC Decision Ltr, 10/21/2016 AR 1903-1913. During the interim period, the CAC granted Jackson a "disabled" status and he began receiving LTD benefits as of June 1, 2016 which were subject to review in March of 2016.

### 3. April 2016 - Second MRC Decision

The MRC determined that Jackson was not eligible for LTD benefits after April

30, 2015. In this decision, the MRC explains what the CAC directed at the appellate

level, what additional information it considered, and why the CAC granted Jackson LTD

benefits. Relevant portions of the MRC's decision follow:

> The CAC decided to send you for a physical medicine and rehabilitation Independent Medical Evaluation, also suggested by Dr. Nicola. The IME was performed by Dr. Neil Friedman on December 5, 2015. Dr. Friedman identified a medical disorder of diabetes with mild peripheral neuropathy. He was unable to identify any significant medical impairments, and did not identify any barriers in your ability to sustain employment at the level of a sedentary job given that there has not been any substantial change in your medical status between January through December of 2015.
> The CAC then asked one of the LTD Program consulting psychiatrists, Dr. Gilbert Hefter, to review your file, speak with Mr. Evans and opined that a psychiatric IME was warranted. That IME was scheduled for March 10, 2016. Because the IME was unable to be scheduled earlier, and your psychiatric status was undetermined, Dr. Hefter further opined that he would find you impaired until the IME is performed and determined otherwise. He questioned the psychiatric care you have received to date.
> The CAC agreed with Dr. Hefter and overturned the previous denial. Based upon the medical IME, the CAC did not find you medically impaired by any of your multiple medical conditions, though needed to rule out that you are not psychiatrically impaired.

AR 1888-1889.

Thus, the CAC's decision to award Jackson LTD benefits on an interim basis was

to determine whether he was psychiatrically disabled - even though Jackson did not

claim disability on this ground. In so doing, the CAC followed the advice of Dr. Hefter.

After explaining that the MRC continued to find based on the same evidence as

before as well as the additional evidence obtained after its first decision, that Jackson

failed to show he was physically disabled, it concluded:

> The MRC also agrees with the opinion of the psychiatric IME physician, Dr. Kezlarian, that you are not psychiatrically disabled. You have a dysthymic condition which is not disabling, and which can be treated on an outpatient basis

10

while you continue to work.

Id.

### 4. October 2016 - Second CAC Decision

Jackson appealed the renewed denial to the CAC.  The CAC again evaluated all of the information reviewed by the MRC, plus new medical records and reports provided by Jackson's physicians in support of his new appeal.  The AR now contained additional notes from Dr. Nicola dated November 4, 2015 (AR 279-281); the IME report and addendum from Dr. Friedman, dated December 8, 2015 and December 16, 2015 (AR 220-225; 233-234)); file review notes from Dr. Hefter in January 2016 (AR 273-275); the IME psychological report from Dr. Jeffery A. Kezlarian (AR 227-232); and an updated TSA of April 2016 (AR 1826-1832).

The CAC then asked for additional review.  The follow up was a new assessment of the medical evidence from Dr. Luc D. Jasmin, MD, PhD, a board-certified physician in neurological surgery.  Dr. Jasmin opined that Jackson was not disabled.  Dr. Jasmin also attempted to contact Jackson's neurologist, Dr. Lee, but his calls were not returned.  The CAC re-considered the entire history of the claim and concluded that Jackson had not carried his burden of proving a disability.  Notably, the CAC specifically mentions letters by Jackson's treating physicians, Drs. Lee and Sack in which they opine Jackson is disabled.  The CAC, however, explained that their opinions were not based on objective medical evidence, noting that the doctors did not provide objective medical evidence to show that Jackson's physical condition had significantly deteriorated since Jackson's IME in 2015.

### 5. July 2017 - Final Decision

Jackson appealed the CAC's decision to the final stage of administrative review. He submitted a letter in support and additional material with his appeal. At this point, Broadspire was the decision-maker. In addition to considering Jackson's new material, Broadspire obtained three (3) more peer reviews by board-certified physicians in the fields of neurological surgery (Dr. Phillip Williams), anesthesiology (Dr. Stanley Yuan), and psychiatry (Dr. Chirag Raval). Each of these new peer reviewers evaluated the file anew and determined that Jackson was not disabled within their medical fields.

Broadspire advised Jackson of the decision that he was not disabled in a detailed letter which summarized the new opinions and distinguished Jackson's submissions. AR 1929-1931. This was the final determination from which Jackson filed this case.

## VI. Conclusions of Law

### A. No Conflict of Interest

Jackson makes a brief argument that the Plan was operating under a conflict of interest. A structural conflict of interest can arise when a plan administrator both evaluates the claims for benefits and pays benefit claims. Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 112 (2008). As noted above, if a conflict exists, then courts weigh the conflict as one factor among others when determining whether there is abuse of discretion in the benefits denial.

The Plan says there is no conflict. The Court agrees. As explained above, the initial stages of review were conducted by Blue Cross Blue Shield Association's (the Association) National Employee Benefits Committee (NEBC), which served as the ERISA plan administrator and the named fiduciary for the employee benefit programs of the independent Blue Cross Blue Shield companies that elect to utilize the services

offered by the Association.  See Summary Plan Description, pp. 3-4, AR 2443-2481.

This is a different entity from Jackson's former employer, Blue Cross Blue Shield of

Michigan, which had contributed funds into a voluntary employee benefits trust (VEBA)

for use to pay claims.  Id.  Therefore, as to individual claims, there was no financial

incentive for the Association Program administrators to deny a claim because they had

no financial responsibility for the benefits payments.  Other courts have concluded the

same.  See Dix v. Blue Cross and Blue Shield Association Long Term Disability

Program, 613 F. App'x 293, 296 (5th Cir. 2015) (holding that the Association, through

NEBA and NEBC, made benefits eligibility decisions, while the Plan paid benefits claims

from a trust, and the underlying participating Blues provider (the Louisiana licensee) had

no financial interest in individual disability determinations); Katsanis v. Blue Cross and

Blue Shield Association, 803 F. Supp. 2d 256, 261 (W.D.N.Y. 2011) (examining the

same structure and noting that it is unlikely a conflict exists, but if one did, it was

immaterial because the decision-makers affiliated with the Association have no access

to the trust and no financial risk).

### B.  Subjective Pain and Objective Medical Evidence

Here, the parties disagree over the significance of the lack of objective evidence

of Jackson's disability in the administrative record.  The Plan does not dispute

Jackson's  diagnoses; however, the Plan says that Jackson has failed to present

objective evidence of any functional limitations resulting from any of his conditions.

Jackson's complaints of pain are subjective and self-reported.  It is entirely reasonable

for an insurer to request objective evidence of a claimant's functional capacity.  The

Sixth Circuit has held that "[r]equiring a claimant to provide objective medical evidence

of disability is not irrational or unreasonable." See Cooper v. Life Ins. Co. of N. Am.,
486 F.3d 157, 166 (6th Cir.2007) (citing Spangler v. Lockheed Martin Energy Sys., Inc.,
313 F.3d 356, 361 (6th Cir.2002)). In Cooper, the court noted that objective medical
evidence of the functional capacity of the claimant, who had a lower back injury, would
have assisted the insurer in determining whether the claimant was capable of
performing the duties of her occupation, as was required by her policy. See also Oody
v. Kimberly-Clark Corp. Pension Plan, 215 F. App'x. 447, 452 (6th Cir.2007) (holding
that denial of disability benefits was not arbitrary and capricious where claimant "failed
to submit sufficient objective evidence to establish he was permanently and totally
disabled, as defined by the Plan"); Nichols v. Unum Life Ins. Co. of Am., 192 F. App'x
498, 504 (6th Cir.2006) (determining that insurer was not unreasonable in concluding
that treating physician's assessment was "largely based on her acceptance of [the
claimant's] descriptions of her medical conditions, rather than based on an objective
assessment of [the claimant's] medical history"); Huffaker v. Metropolitan Life Ins. Co.,
271 F. App'x 493 (6th Cir. 2008) (denial of claim based fibromyalgia symptoms was not
arbitrary and capricious where the claimant failed to persuade the plan with objective
medical evidence); Rose v. Hartford Fin. Servs. Grp., Inc., 268 F. App'x 444, 453–54
(6th Cir. 2008) (not unreasonable for insurer to required objective proof of subjective
conditions).

At oral argument on the motions, Jackson's counsel cited Godmar v. Hewlett-
Packard Co., 631 F. App'x 397 (6th Cir. Dec. 9, 2015), in support of his argument that
where subjective complaints of pain are at issue, a rejection for lack of objective medical
evidence amounts to a credibility determination which, for a physician who does only a

14

file review, is evidence of arbitrariness. Jackson's reliance on Godmar is misplaced. In Godmar, the Sixth Circuit was critical of file reviews and a consulting physician's rejection of subjective complaints for lack of evidence. However, the court of appeals' concern in Godmar stemmed from the fact that the plan administrator had relied solely on file reviews for its rejection of the claimant's subjective complaints of pain and did not have any of its consulting physicians examine the claimant. The Sixth Circuit explained:

> File reviews are particularly troubling when the administrator's consulting physicians—who have never met the claimant—discount the claimant's limitations as subjective or exaggerated. See Calvert, 409 F.3d at 296–97. Thus, we have observed that "reliance on a file review may be inadequate" when "the conclusions from that review include critical credibility determinations regarding a claimant's medical history and symptomology." Evans v. UnumProvident Corp., 434 F.3d 866, 878 (6th Cir.2006) (quoting Calvert, 409 F.3d at 297 n. 6) (internal quotation marks omitted). Further, "we will not credit a file review to the extent that it relies on adverse credibility findings when the files do not state that there is reason to doubt the applicant's credibility." Bennett v. Kemper Nat. Servs., Inc., 514 F.3d 547, 555 (6th Cir.2008).
> Here, Sedgwick and its consulting physicians concluded that Godmar's consistent reports of pain were not objective evidence of disability. Sedgwick acknowledged Godmar's extensive injuries and his treating physicians' continuous documentation of pain in his left leg. But the consulting physicians apparently dismissed Godmar's reported pain—and any corroborating diagnosis by his treating physicians—as inherently subjective. In so doing, Sedgwick implicitly determined that Godmar's description of his limitations was not credible. Cf. Helfman v. GE Grp. Life Assurance Co., 573 F.3d 383, 395–96 (6th Cir.2009) (stating that dismissing a claim as subjective is an implicit credibility determination).
> We addressed similar situations in Smith v. Continental Casualty Co., 450 F.3d 253 (6th Cir.2006), and Shaw v. AT & T Umbrella Benefit Plan No. 1, 795 F.3d 538 (6th Cir.2015). In Smith, we explained that making "credibility findings concerning [the claimant's] pain without the benefit of a physical exam" would "support the finding that [the administrator's] determination was arbitrary." 450 F.3d at 264. And in Shaw, we observed that the administrator "should not have made a credibility determination about [the claimant's] continuous reports of pain" without an examination, even under an objective-evidence standard. 795 F.3d at 550. "Because chronic pain is not easily subject to objective verification, the Plan's decision to conduct only a file review supports a finding that the decision-making was arbitrary and capricious." Id. Like the administrators in Smith and Shaw, Sedgwick decided that Godmar's pain was subjective without

examining him, and that failure weighs in favor of a determination that the denial of his claim was arbitrary and capricious.

Godmar, 631 F. App'x at 406-07.

Here, unlike in Godmar, the Plan had Jackson undergo two IMEs and two TSAs - during which Jackson was physically examined. Although Jackson's claim was also the subject of several file reviews, the decision to deny Jackson benefits was based on more than just a file review. Through the direct examinations of Jackson, the Plan obtained evidence to come to a reasoned conclusion that Jackson's subjective complaints of pain were not objectively supported. In short, the decision-making process in this case was wholly different than in Godmar.

### C. Full and Fair Review

#### 1. Reasonable Process

The record displays an extensive process and ample evidence from which a reasonable person exercising discretion could deny the claim. Jackson was given a full and fair opportunity to develop the record and to try and prove his claim. The voluminous AR speaks for itself. It includes medical records from physicians that treated or consulted with Jackson, IME and peer review reports, numerous letters between the Plan and Jackson or his attorney, diagnostic and lab reports, physician notes, physician correspondence, and skills assessment reports. The Plan made its final decision only after considering opinions or materials gleaned from nearly a dozen medical professionals. This included Jackson's own two (2) treating physicians, two (2) physicians who conducted independent medical examinations of Jackson personally, the peer review opinions of six (6) other physicians who reviewed the medical records,

and the assessment of functional capacity evaluators.  See, e.g., Second CAC Decision Ltr, AR 1903- 1913; and Broadspire Final Decision Ltr, AR 1929-1931.

All of the decisions detail the evidence considered and carefully explain the reasons for discounting Jackson's evidence.  Broadspire's final decision was based on the overall record; it was not a proverbial "rubber stamp."  There is nothing in the process which would indicate Jackson's claim was not fully considered at every level of review.

### 2.  Evidence Supporting Plan's Decision

As noted above, the crux of Jackson's claimed disability - pain - is based on subjective and self-reported symptoms.  Physicians necessarily must look beyond his own characterization to discern the existence of an underlying disability.  There is no dispute that Jackson presented to various physicians over the years with various pain-related symptoms based on his 2006 car accident and fibromyalgia. Yet conditions associated with chronic pain are knowable to experts in the field, and in this instance, there was insufficient objective evidence to find a disability due to his back issues, fibromyalgia, or even diabetes.

The difference between subjective characterizations and objective medical facts is typified by the September 2015 TSA that was performed to assess Jackson's ability to various tasks associated with his type of work. Therapist David W. Goldenbogen, DPT, conducted the evaluation.  Overall, the TSA objectively revealed that Jackson "demonstrates the physical capabilities and tolerances to function at the Sedentary physical demand level" and was "functionally employable at this time."  TSA 9/2/2015, p. 1, AR 431-446.  Jackson met 88.89% of job demands.  Id.  Although Jackson did not

demonstrate physical capabilities and tolerances to perform "all" of the essential job functions of a customer service representative. However, Goldenbogen determined that the overall results did not represent a true and accurate representation of Jackson's capabilities because Jackson held back during the testing. Goldenbogen believed that Jackson exhibited significant "inconsistent performance/unacceptable effort" and therefore concluded Jackson was "capable of greater functional abilities" than he demonstrated during the test. Id. This is potent evidence that Jackson's subjective efforts did not match the objective proofs.

Jackson had a second TSA in early 2017 at the request of Jackson's counsel, and the results were provided to the Program in support of his appeal. See Active Functional Testing, LLC Report, 2/9/2017, AR5299-5327. Although the report notes his conditions and pain and indicates that it "would be difficult to perform regular job duties," overall it reasonably supports the Plan's conclusion that Jackson can perform sedentary and light duty work. Id., see also, Dr. Williams' Report, 9/18/17, p. 6 AR 2673-2679 (Dr. Williams is a neurosurgeon who evaluated the updated TSA and did not believe the results supported a disability finding).

Another important fact in the record is the opinion of Dr. Friedman, a board-certified specialist in Physical Medical & Rehabilitation, who conducted a thorough physical evaluation of Jackson and his medical records in December 2015. Dr. Friedman acknowledged Jackson's history of back issues and the results of the FCE yet did not believe that the conditions and test results supported "significant medical impairments" or "barriers to this individual's ability to sustain employment." Friedman Report, 12/8/2015, p. 5, AR 220-225. Indeed, in response to follow-up questions from

18

the Program, Dr. Friedman specifically opined that Jackson had the ability to sustain a sedentary level of employment even with his back conditions. Friedman Addendum Report, 12/16/2015, AR 233-234.

Other experts who reviewed Jackson's file, but did not examine him, at different times over a nearly two-year span concurred that he was not disabled. Dr. Nicola reviewed Jackson's file, the records of Jackson's own physician, the results of the 2015 TSA and concluded that there was no objective evidence supporting a disability status at that time. See Nicola report, AR 198-199 ("The above testing and examination does not show any reliable/consistent evidence of a physical deficit from sedentary level activity."). Dr. Kezlarian did an IME on Jackson in March 2016, in order to assess his psychiatric condition. See Kezlarian Report, 3/14/2016, p. 5 AR 227-232. Dr. Kezlarian did not "find any emotional or cognitive impairments that would prevent or seriously limit Mr. Jackson's ability to work with or without restrictions." Id. He was "dysphoric and a bit unhappy, but not particularly depressed." Id. Dr. Kezlarian also noted that Jackson had personal issues involving relationships in his life, and he did not "seem to be strongly motivated to return to work." Id. Dr. Jasmin evaluated all of the medical files and evidence in October 2016, including notes from Jackson's physician, Dr. Lee. Jasmin Report, 10/18/2016, p. 7, AR 1914-1921. Dr. Jasmin opined that Dr. Lee's "disability" opinion was conclusory, as there was no "reliable, valid and reasonably compelling evidence that [Jackson] has impairments preventing him from his physical demand levels of the job ... " Id. Dr. Williams (Neurosurgery) reviewed the file and focused on MRIs and other evidence related to Jackson's spine and disk issues. Williams Report, p. 6, 7/18/2017, AR 2673-2679. Dr. Williams indicated that although

MRI results "revealed degenerative disc disease at C3-4 and C5-6L-4-5 and also at L4-5 and with right neural foraminal narrowing," this was not considered disabling. He expressly rejected Dr. Lee's opinions, finding that it was "not supported by the medical documentation provided for review." Id. Dr. Yuan (Anesthesiology) likewise reviewed all of the medical evidence. Yuan Report, 7/18/2017, p. 9, AR 2688-2697. He noted that the "documentation for this claimant as it relates to a neurosurgical/pain management perspective is extensive." However, he opined that Jackson "does not have medically supported restrictions and limitations from a pain management" perspective, and that his "symptoms have been stable ... with no significant changes." Id. Dr. Yuan believed that Jackson "should be able to complete his job duties." Id. Finally, Dr. Raval (Psychiatry) affirmed the opinions of Dr. Kezlarian relating to Jackson's psychiatric condition. Raval Report, 7/18/2017, p. 7, AR. 2680-2687 (the "clinical records in this case would not support the need for specific disability attributed to psychiatric diagnosis").

From this record, there is a reasoned explanation for the Plan's decision. While Jackson has ongoing pain-related symptoms, they have been managed and do not prevent him from working in a sedentary position. In short, he does not meet the Plan definition of disabled.

### 3. Evidence Favorable to Jackson

Jackson says that the views of his own physicians were not considered and therefore the Plan's decision was arbitrary. The Court disagrees. ERISA plans are not bound by the opinions of a participant's own physicians. Whitaker v. Harford Life and

Acc. Ins. Co., 404 F.3d 947 (6th Cir. 2005) (citing Black & Decker Disability Plan v. Nord, 538 U.S. 822, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003)). Plans may rely on physician opinions retained to conduct examinations, even when those physicians disagree as to the existence of a disability. Huffaker v. Metropolitan Life Ins. Co., 271 F. App'x 493 (6th Cir. 2008) (not arbitrary and capricious for plan to rely on opinions other than the treating physician); Wooden v. Alcoa, Inc., 511 F. App'x 477 (6th Cir. 2013) (proper to credit the opinions of multiple physicians over the plaintiffs treating physician in denying a claim). Thus, the fact that Jackson's treating physicians held a different opinion does not mean that the Plan's decision to rely on other physician opinions and other evidence was unreasonable.

Jackson also notes that the updated TSA reports support the premise that Jackson has at least some limitations. That is true. However, as explained above, there were concerns with Jackson's effort during the TSA. The TSA evaluators found that overall Jackson could work even despite the fact that Jackson had exhibited uneven effort during the evaluation.

Overall, the fact that some evidence may support a finding of disability is not determinative. Under the Plan, Jackson must demonstrate with "objective medical evidence" that he is "wholly prevented, by reason of mental or physical disability, from engaging in any occupation comparable to the occupation in which he or she was engaged for the Participating Employer at the time of, or immediately prior to the claimed onset of his or her Disability." Plan Documents, ,§ 3.I(a) p. 11-12, AR 2377-2442. Moreover, the Plan administrators have the "sole discretion" to make factual determinations of eligibility. See Plan Documents, § 1 .4 p. 3, (section regarding

"Administration"), AR 2377-2442. Thus, the Plan was not obligated to rely on evidence in Jackson's favor or his subjective opinions and beliefs of his claimed disability status but was required to exam the record as a whole. See Frazier v. Life Ins. Co. of North America, 725 F3d 560, 567 (61h Cir. 2013), (holding that it was not arbitrary and capricious for an insurer to rely on the full record to make a determination rather than "simply relying on [claimant's] stated pain levels").

### 4. Prior Award of Benefits

The fact that the CAC directed that benefits be paid in early 2016 while more information was being gathered is not evidence that the Plan's ultimate decision was arbitrary. As explained above, the payment of benefits was temporary due to the need for a psychiatric examination. Jackson never claimed a disability due to psychiatric issues. The Plan's decision to pursue the issue reflects a careful and measured review process, quite apart from arbitrary action. The Plan also contemplates that a disability determination is continual regardless of an initial determination, i.e. benefits will cease if a participant is no longer considered disabled. See Plan Documents, § 4.2(c)(iv), AR 2408 (emphasis added); see also Dix v. Blue Cross and Blue Shield Ass'n Long Term Disability Program, 613 F. App'x at 293 (51h Cir. 2007) (upholding denial in a case because the medical evidence no longer supported the disability determination).


### VIII. Conclusion

Jackson has not meet his burden of showing that the Plan's decision was arbitrary and capricious based on the administrative record. Rather, the administrative record reflects a careful review process which resulted in a decision that is neither

arbitrary nor capricious but instead reasonably supported.  The Plan's motion for judgment is GRANTED.  Jackson's motion for judgment is DENIED.  This case is DISMISSED.

SO ORDERED.


S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: 4/26/2018
        Detroit, Michigan